**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**UNITED STATES OF AMERICA,**

      **Plaintiff/Appellee,**

**v.**                                     **No. SA:21-CR-00407-JKP**

**NAOMI M. GOMEZ,**

      **Defendant/Appellant.**

### ORDER AFFIRMING MAGISTRATE JUDGE RULING

Defendant appeals the Magistrate Judge's ruling denying her motion to suppress. *See* ECF No. 34 (SA:20-mj-347). She argues the Magistrate Judge erred in denying her motion upon finding that the sniff of Rosco, a trained drug-detecting dog, did not constitute a search for Fourth Amendment purposes. ECF No. 6. With briefing complete, ECF Nos. 7, 8, the Court heard oral arguments on March 22, 2022.

An order of a magistrate judge may be appealed to a district judge. Fed. R. Civ. P. 58. "The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." *Id.* In evaluating a magistrate judge's denial of a defendant's motion to suppress the Court reviews factual findings for clear error and legal conclusions de novo. *United States v. Gomez*, 623 F.3d 265, 268–69 (5th Cir. 2010); *accord United States v. Bass*, 996 F.3d 729, 737 (2021). A magistrate judge's ruling should be upheld if there is any reasonable view of the evidence to support it. *United States v. Massi*, 761 F.3d 512, 520 (5th Cir. 2014).

Defendant challenges only the Magistrate Judge's legal conclusion that Rosco's sniff does not constitute a search. The Magistrate Judge found the following facts:

> At around 9:45 p.m. on January 19, 2020, a trained drug-detection dog standing
> outside a car parked at a hospital on Joint Base San Antonio-Fort Sam Houston

alerted its handler, Staff Sergeant ("SSgt") Amanda Wimberly, to the presence of an illegal controlled substance inside the car. The dog, named Rosco, was trained to alert to the presence of cocaine, methamphetamine, heroin, marijuana, or ecstasy. Rosco's training, however, did not enable him to differentiate between "legal and illegal levels of THC." Thus, when asked later at a suppression hearing whether Rosco could "tell the difference between th[e] THC levels" in "CBD oil, hemp, any of that," SSgt Wimberly acknowledged that "No" Rosco could not.

Following the dog's alert, SSgt Wimberly shined a light into the Altima's interior. She saw through the glass window—in plain view—a brown hand-rolled cigarette that, based on her training and experience, she believed was likely a marijuana cigarette. SSgt Wimberly then "leaned up to the door frame" of the car and "could smell what [she] believed to be the scent of marijuana." SSgt Wimberly would later acknowledge, at the suppression hearing, that but for the dog's alert she never would have approached the car or looked inside of it. Counsel for the Government, at that same hearing, also acknowledged this fact. . . . ("The bottom line being, too, that she [SSgt Wimberly] saw in the center console, after the dog alerted, what appeared to be a joint of marijuana in that center console."). The following interchange from the suppression hearing sums up this point:

> Q. [counsel for Gomez]. . . . So if Rosco had not altered on that vehicle, you would have never walked around the parking lot with your flashlight just looking in random vehicles, would you?
>
> A. No, sir, probably not.

A little after midnight, SSgt Wimberly saw Defendant Gomez walk up to the parked Altima. Wimberly approached Gomez and told her about Rosco's alert. Gomez then stated that she had marijuana and drug paraphernalia in the Altima. SSgt Wimberly then obtained Gomez's consent, verbally and in writing, to search the Altima. Wimberly also explained that Gomez could terminate her consent to the search at any time. But before searching, SSgt Wimberly placed Gomez, unhandcuffed, in the back seat of her patrol vehicle. This was apparently done to protect Gomez from the cold weather. At that point, however, Gomez was no longer able to leave and could not get SSgt Wimberly's attention or otherwise indicate she might no longer consent to the search.

The search yielded the aforementioned cigarette, resting in plain view in the center console, as well as a grinder, a pipe, a rolling tray, and a green leafy substance in a black container. The green leafy substance was field tested and yielded a positive result for the presence of THC, although no concentration of THC was established at that time. Gomez was arrested for possession of marijuana in violation of 21 U.S.C. § 844(a). Later, the substance was sent to the United States Army Criminal Investigation Laboratory for testing, and the lab report confirmed the substance was in fact marijuana.

ECF No. 34 at 2-4 (SA:20-mj-347) (citations to the record omitted).

A "canine sniff" by a "well-trained narcotics detection dog," does not require entry into a place or thing the Fourth Amendment protects from the government's prying eyes. *United States v. Place*, 462 U.S. 696, 707 (1983); *see Fla. v. Jardines*, 569 U.S. 1, 6 (2013) ("The Fourth Amendment indicates with some precision the places and things encompassed by its protections: persons, houses, papers, and effects."). Consequently, "[t]he use of trained dogs to sniff automobiles parked on public parking lots does not constitute a search within the meaning of the [Fourth Amendment]." *Jennings v. Joshua Indep. Sch. Dist.*, 877 F.2d 313, 316 (5th Cir. 1989) (citing *Horton v. Goose Creek Independent School District* 690 F.2d 470, 477 (5th Cir. 1982)). This is because a dog's sniff "does not expose noncontraband items that otherwise would remain hidden from public view." *Place,* 462 U.S. at 707; *accord Illinois v. Caballes*, 543 U.S. 405, 407 (2005). An unerring sniff "discloses only the presence or absence of . . . contraband." *Place*, 462 U.S. at 707.

While the definition of marijuana as contraband has been evolving, § 844(a) of the United States Code remains—as yet—unchanged, to wit:

> It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice, or except as otherwise authorized by this subchapter or subchapter II.

21 U.S.C. § 844(a). Therefore, where federal law controls, such as on a Department of Defense installation, any amount of a controlled substance possessed illegally is contraband. Accordingly, Rosco's sniff was not a search.

Defendant argues that given the evolving laws regarding marijuana (and other cannabinoid products or derivatives), dog sniffs are increasingly becoming unreliable and therefore violative of the Fourth Amendment because dog sniffs cannot discriminate between contraband and

marijuana that is legally possessed. But on the facts presented here—a trained-dog sniff of the outside of a vehicle parked in a parking lot on federal property—*Place* and *Caballes* are still good law. There may come a day when Rosco's sniff no longer reliably detects only contraband but impermissibly detects lawful activity due reasonable expectations of privacy. This is not that day. The ruling of the Magistrate Judge is AFFIRMED.

**It is so ORDERED this 24 day of March 2022.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**